## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JOHN MILLER | ) Case Nos. | 4:17-cv-00180-LCB-JEO |
| MICHAEL MCGREGOR | ) | 4:17-cv-00593-LCB-JEO |
| MICHAEL TOWNSEL | ) | 4:17-cv-00516-LCB-JEO |
|    Plaintiffs, | ) | |
| | ) | |
| | ) | Consolidated for Discovery |
| v. | ) | Before Magistrate Judge Ott |
| | ) | |
| KIM THOMAS, et al., | ) | |
|    Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS'
### JOINT MOTION TO COMPEL DOCUMENTS AND TESTIMONY
### RELATING TO DEFENDANT GRANTT CULLIVER, AND
### FOR LEAVE TO REOPEN DEPOSITION OF DEFENDANT JEFFERSON DUNN

Plaintiffs John Miller, Michael McGregor, and Michael Townsel, through their attorneys, Loevy & Loevy, hereby respectfully move this Court to Compel Documents and Testimony Relating to Grantt Culliver, and for Leave to Reopen the Deposition of Defendant Jefferson Dunn.[1] In support thereof, Plaintiffs state:

### INTRODUCTION

Plaintiffs John Miller, Michael McGregor, and Michael Townsel bring the above-captioned cases to seek redress following the sexual and violent assaults and retaliation they experienced at the St. Clair Correctional Facility. Plaintiffs allege that each of the Defendant corrections personnel from the Alabama Department of Corrections ("ADOC") declined to protect them even though they knew of actual threats to Plaintiffs' safety.

---

[1] Counsel for Plaintiffs and counsel for Defendants have conferred in writing and over the phone about these issues and are at an impasse.

Last week, the Alabama Political Reporter revealed a bombshell: that Defendant Grant Culliver, the administrator charged with preventing sexual assault and other security violations throughout ADOC, had himself engaged in prolonged, widespread sexual assault of numerous employees. Exh. A, Bruitt, Bill, Alabama Political Reporter, *Sexual misconduct allegations at Department of Corrections kept from public by bureaucracy* (Jan. 7, 2019). Although the scope of Culliver's misconduct is largely unknown to Plaintiffs, a November 9, 2018 letter untimely disclosed by Defendants this week indicates that it included "serious violations of rules, policies, procedures, regulations, laws, and reasonable conduct expectations"; "conduct that is disgraceful"; "harassment or discrimination"; "use of abusive, profane, or threatening language"; "abuse or misuse of authority"; "abuse or misuse of equipment, causing damage"; and "unauthorized use of . . . state property." Exh. B, November 9, 2018 Letter.

The Alabama Political Reporter article revealed a second bombshell: that Defendant Culliver's misconduct was long known to Defendant Commissioner Jefferson Dunn, who nonetheless put him in charge of overseeing sexual assault and other security matters for ADOC. Exh. A, APR Report, at 2. The reporting—backed by employee interviews and personnel documents—indicates that Defendant Dunn was specifically warned about Culliver's misconduct by Interim Commissioner Sharp, reinstated Culliver to his associate commissioner position in 2015 notwithstanding this knowledge, and then proceeded to bury complaints against Culliver until the governor's office requested an investigation in 2018. *Id.*

Even prior to this news, Defendants Culliver and Dunn were central defendants in Plaintiffs' cases: they received written notice of specific threats and mistreatment of two of the Plaintiffs in 2015 and yet took no action to protect them. Exh. C, Letter from EJI to Dunn. At his November 2018 deposition, Dunn's central defense was that he delegated <u>to Defendant Culliver</u> the Department's response to sexual assault and retaliation, both generally and specifically with respect to the written notice about the Plaintiffs. Exh. D, Dunn Transcript, at 109:2-112:11. Culliver, of course, took no action. Culliver's apparent pattern of sexual assaults and misconduct, and Dunn's lack of response to it, bear highly on whether they were deliberately indifferent to the risk of sexual assault and retaliation faced by Plaintiffs.

Although Plaintiffs served discovery requests a year ago seeking information about complaints, investigations, disciplinary actions, and misconduct by Defendant Culliver, and diligently followed up multiple times to ensure complete responses, the first time Defendants produced any records relating to any complaints or investigation of Culliver was last week, in response to Plaintiffs' requests. Even now, following the media revelations about Culliver, Defendants have yet to turn over large swaths of relevant information and documents relating to Culliver's misconduct, such as any documents detailing the nature of any underlying misconduct or documents from any internal or external investigation. Nor have Defendants disclosed the categories of documents they have withheld relating to these matters or provided a privilege log. Even though discovery is set to close soon, Defendants further take the position that Culliver cannot testify about any misconduct that he committed ever during his tenure with the

3

Department until action by the Alabama Ethics Commission, and reserve the right to object to such testimony even after the Commission acts. Defendants likewise refuse to re-produce Defendant Dunn for brief questioning on his knowledge of Culliver's misconduct and the improperly withheld documents and information.

Perhaps most troubling of all, Defendants try to deflect blame onto Plaintiffs' counsel for supposedly failing to ask the proper questions and make the proper inquiries. Such a contention is indefensible. Defendants concealed highly relevant information from Plaintiffs, and but for the fact that Plaintiffs fortuitously discovered it in the news, this information would have remained buried. Having violated their own discovery obligations, Defendants cannot now complain that Plaintiffs' counsel did not unearth their violations quickly enough.

Plaintiffs have suffered prejudice from Defendants' conduct, as Plaintiffs have deposed nearly all of the defendants in this matter, depositions are set to conclude at the end of January, Plaintiffs' expert report is due at that time, and fact discovery is set to close in March, leaving Plaintiffs little time to serve and conduct follow-up discovery about these monumental developments.  Accordingly, this Court should order that:

(1) Defendants must provide, within seven days, all improperly withheld documents, communications, and information related to Culliver's misconduct and related matters, in response to Plaintiffs' Master Set of Requests for Production No. 3; Plaintiffs' Individualized Interrogatories to Defendant Culliver Nos. 5 and 6; and Plaintiffs' Individualized Interrogatories No. 1 to all Defendants, as described in more detail below;

(2) Defendant Culliver must answer questions at a deposition about his misconduct and all related matters[2]; and,

(3) Defendant Dunn must appear for a brief ninety-minute re-deposition at a location and date of his choosing to respond to questions about the improperly withheld documents and information.

Defendants have proposed, and Plaintiffs agree, that these monumental developments necessitate an extension of discovery to facilitate follow-up discovery by Plaintiffs, and anticipate filing either joint or separate proposals with the Court shortly.

## BACKGROUND

### I.   Plaintiffs seek redress for the failure of Defendants Culliver, Dunn, and others to protect them from sexual and violent assaults and retaliation at St. Clair.

Plaintiffs seek redress for Defendants' failure to protect them from separate instances of rape, assault, and retaliation and other constitutional violations at the dangerous St. Clair Correctional Facility in 2015. Plaintiffs allege that various Defendants deliberately allowed prisoners to be sexually assaulted by, among other things, ignoring their pleas for safety, knowingly subjecting them to high levels of risk, declining to disarm their assailants, failing to conduct contraband weapons searches, encouraging a culture of violence in which inmates carried knives and roamed the prison freely without supervision, failing to ensure that cell doors properly locked, and retaliating against assault victims. The cases have been consolidated for discovery.

---

[2] Defendants have offered to perhaps present Mr. Culliver for deposition once before the Ethics Commission completes its findings and once after. However, Defendants will not guarantee that Mr. Culliver will be presented the second time. Needless to say this is not a solution to the parties' impasse. Plaintiffs are entitled to discovery into Culliver's misconduct and Defendants have no basis on which to withhold it. Nor would Defendants' proposal streamline the case; even if Defendants allowed a second deposition of Defendant Culliver after the Ethics Commission concludes its work, discovery would still not be completed until after the second deposition.

**II.    Defendants withheld highly relevant documents and information about serious and prolonged misconduct by Defendant Culliver and a potential cover-up by Defendant Dunn**

During discovery, Defendants withheld information about Defendant Culliver's misconduct. Plaintiffs are still largely in the dark about this misconduct. Last week's Alabama Political Reporter article revealed that Culliver had "used his position at DOC to coerce women under his command into sexual liaisons in return for promotions or other considerations" and "transferred individuals who rebuffed his advances." Exh. A, APR Report, at 2. The article further stated that Defendant Culliver had admitted—in response to unknown investigatory findings—that he had abused his authority to coerce at least six women under his authority to engage in sexual acts with him. *Id.* A document untimely disclosed by Defendants on January 4 revealed that Culliver had engaged in "serious violations of rules, policies, procedures, regulations, laws, and reasonable conduct expectations"; "conduct that is disgraceful"; "harassment or discrimination"; "use of abusive, profane, or threatening language"; "abuse or misuse of authority"; "abuse or misuse of equipment, causing damage"; and "unauthorized use of . . . state property." Exh. B, November 9, 2018 Letter. Also unknown to Plaintiffs are the number and timing of all internal and external investigations into Defendant Culliver's misconduct and their results.

Defendants also withheld information about personnel actions relating to Defendant Culliver. As Plaintiffs learned last week from a 2015 employment document given to the press—that Defendants did not disclose in discovery—the Interim Commissioner of the Alabama Department of Corrections, Billy Sharp, abruptly revoked

Culliver's probationary performance appraisal and demoted him from his associate commissioner role in 2015 for some unknown misconduct, to serve instead as institutional coordinator. Exh. E, Culliver Employment Records Attached to APR Article, at Plaintiffs 8931. Dunn then reinstated Culliver to the role shortly thereafter. *Id.* at Plaintiffs 8921. Although the brief role change was referenced in a prior deposition transcript by Defendant Culliver, Plaintiffs were not aware until last week that Sharp had removed Culliver for apparent sexual misconduct; that Sharp had expressly warned Dunn about Culliver; and that Dunn nonetheless reinstated Culliver to the position after receiving such warnings. Exh. E, Culliver Employment Records Attached to APR Article. Untimely produced documents reveal that Dunn permitted Culliver to retire with his full pension, rather than terminating him or recommending him for criminal prosecution. *Id.* at Plaintiffs 8912.

Finally, Defendants withheld information about Defendant Commissioner Dunn's role in potentially covering up Culliver's misconduct. Last week's news report indicates that Defendant Commissioner Dunn received notice of allegations against Culliver in 2015 from Interim Commissioner Sharp; reinstated Culliver to the position of associate commissioner overseeing security, including sexual assault, notwithstanding Sharp's warnings; continued to ignore complaints against Culliver through 2018; and declined to investigate until the Governor's office got involved. Exh. A, APR Report. Documents untimely produced by Defendants this week further indicate that after the conclusion of the investigation in early November 2018, Dunn himself referred the matter to Alabama Ethics Commission in November for review, in a possible attempt to shield the

investigatory findings from disclosure. Exh. F, ADOC Documents Regarding Culliver's Employment.

## III. Defendants were obligated to produce the documents and information they withheld.

Numerous discovery requests plainly called for Defendants Dunn, Culliver, and others to produce the above-described discovery. At the start of the discovery period, in January 2018, Plaintiffs promptly served interrogatories on Defendant Culliver specifically seeking information about complaints against him and investigations into his conduct, as well as any civil and legal proceedings against him. Exh. G, Individualized Interrogatories Nos. 5 and 6. Defendant Culliver failed to disclose any information about any complaints against him and did not supplement his responses at any point during the last year, despite the requirements of Rule 26(e) and the Court's order requiring prompt supplementation. *Miller v. Thomas, et al.*, Case No. 4:17-cv-00180-LCB-JEO, Dkt. 58-1 at 6 (parties' agreement on supplementation); Dkt. 60 at 3 (Court order requiring compliance with parties' agreed terms for supplementation). When Plaintiffs followed up after receiving Defendants' interrogatory responses, Defendants referred Plaintiffs to their personnel files and represented: "Personnel files should contain *all instances* in which a complaint was critical enough to lead to a disciplinary charge against one of the DOC employees." Exh. H, Rule 37 Response from Defendants to Plaintiffs, at Response to Interrogatory No. 5 (emphasis added).

Likewise, Plaintiffs served document requests in January 2018 seeking documents related to complaints and investigations against Defendant Culliver. Exh. I, Pls.' Jan.

2018 Requests for Production, No. 3. Defendants responded to Plaintiffs' request by lodging certain objections but agreeing to produce the requested records, representing: "the DOC Defendants agree to produce the personnel files and the training jacket for each DOC Defendant and any relevant written records of disciplinary action or written complaints and counseling records related to the DOC Defendants during the relevant time period at St. Clair." Exh. J, Defendants' Objections to Plaintiffs' Requests For Production, No. 3 at p.7. Defendants responded by producing personnel records that omitted any mention of any sexual assault or any other complaints against Defendant Culliver, and likewise did not produce any incident reports, complaints, communications, or any other records from Mr. Culliver's employment that referenced his sexual assaults or any other unprofessional conduct.

After receiving Defendants' initial document production, Plaintiffs diligently followed up to ensure that they were receiving the complete set of records:

> Plaintiff requests that Defendants produce all written records of disciplinary action or written complaints and counseling records, not just ones that Defendants consider "relevant" and not limited to the "relevant time period at St. Clair." In failure-to-protect claims, Defendants' states of mind will be key issues. *See, e.g.*, *Sepulveda v. Burnside*, 170 F. App'x 119, 123 (11th Cir. 2006); *Bonner v. Chambers Cty.*, No. 3:04CV01229 WKW, 2006 WL 1731135, at *2 (M.D. Ala. June 19, 2006). Defendants' complete disciplinary, complaint, and counseling histories will illuminate their states of mind. This information is relevant and not protected from production by any privilege, and it is presumptively discoverable. *See Giraldo v. Drummond Co., Inc.*, No. 2:09-CV-1041-RDP, 2012 WL 12892789, at *10 (N.D. Ala. Mar. 8, 2012); *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998). Please provide the complete personnel, disciplinary, and/or employment file for each Defendant.

Exh. K, Rule 37 Letter from Pls. to Defs. In a May 2018 response, Defendants again reassured Plaintiffs that they had produced all responsive documents:

> We previously produced the personnel files for each Defendant except Dunn . . . . Copies of any and all disciplinary actions or counseling sessions should be included in the personnel files.

Exh. H, Rule 37 Response from Defs. to Pls., at Response to Request No. 3.

Plaintiffs now know that written allegations of misconduct against Culliver were filed with the ADOC Office of Inspector General, which Dunn oversees, no later than September 2018 and that Defendant Dunn received the results of a completed investigation by the Attorney General's office into Culliver on November 2, 2018. Exh. L, Brown, Melissa, *Alabama Prison Official Retires Amid Misconduct Probe*, Montgomery Advertiser, December 4, 2018; Exh. B, November 9, 2018 Letter. Nonetheless, Defendants continued to conceal any mention of any investigation or complaint regarding Culliver and first produced any documents relating to this matter on January 4, 2019. Of note, Defendants did not supplement their discovery responses with this information prior to Plaintiffs' deposition of Defendant Dunn on November 9, 2018.

In mid-December, long after Defendant Dunn's deposition, news reports came out indicating that Defendant Culliver had been forced to retire based on some unknown misconduct. Plaintiffs' counsel pressed Defendants to supplement their discovery responses and produce documents relating specifically to Culliver, even though Defendants were already obligated by Court order and Rule 26(e) to have produced such documents. Exh. M, Email Chain of December 18, 2018.

On January 4, 2019, in response to Plaintiffs' inquiries, Defendants' counsel explained:

10

Here is the latest on Grant Culliver. There is an ongoing investigation outside DOC and by state law we cannot produce **anything** in connection with the investigation. In addition, he cannot testify about the investigation or anything related thereto since a violation of the applicable statutes could constitute a criminal offense for him or us.  We are looking in to whether we can produce one document in Mr. Culliver's personnel file at all or redacted and I should know by Monday. We should be able to produce the other documents from his personnel file this afternoon or tomorrow morning once I make sure they have been marked confidential and have personnel information redacted. It is very few pages.

To be clear, **I am assured the investigation has nothing to do with conditions of confinement at SCC or any inmates.**

. . . . We will not allow him to testify about anything having to do with the investigation . . . .

Exh. N, Email from Defs. to Pls. of January 4, 2019 (emphasis in original).  Defendants then produced only seven pages of personnel records regarding Defendant Culliver— none of which contained any information about his misconduct. Exh. O, Email from Defs. to Pls. of January 4, 2019.

On January 7, 2019, the Alabama Political Reporter article went public revealing that Culliver had engaged in sexual assault and other misconduct—allegations that are directly relevant to Plaintiffs' claims in this case. In addition to describing Culliver's jaw-dropping sexual misconduct, the Alabama Political Reporter attached numerous personnel records that Plaintiffs had not received in discovery. For example, Defendants had not produced a critical 2015 employment letter from interim commissioner Billy Sharp implying that Culliver's brief assignment change in early 2015 had resulted from some unknown misconduct. Exh. E, Culliver Employment Records Attached to APR Article. Defendants had also failed to produce personnel documents regarding Culliver dated October 2018. Plaintiffs discovered the omission of these documents in media

reports; they did not receive them from Defendants and they would have otherwise not known about them. When questioned about this matter, defense counsel relayed Defendants' explanation that the 2015 letter had not been placed in Culliver's personnel file and that as of January 11, 2019, the October 2018 documents had not yet been filed there either. Exh. P, Letter from Defs. to Pls. of January 11, 2019, at 4.

At the time of this filing, Defendants have not produced any interrogatory responses regarding Culliver's misconduct, nor what must be a sizeable number of documents within their possession, custody, or control relating to Culliver's underlying misconduct, complaints against him by any employees or prisoners, investigations into Culliver, personnel actions taken against him, or communications about those matters. Nor have Defendants provided any privilege log for any withheld documents, despite requests. Likewise unknown to Plaintiffs are the identities of potential witnesses to the misconduct and any cover-up by Defendant Dunn and others.

## DISCUSSION

### I. The Documents and Information Withheld by Defendants Are Highly Relevant

The newly-public information is highly relevant to prove Plaintiffs' claims and rebut Defendants' defenses for at least five reasons.

First, Plaintiffs Miller and Townsel allege that Defendants Dunn and Culliver failed to protect them from ongoing threats and harassment from their rapists even after Dunn and Culliver received a letter specifically warning them that recent sexual assault victims at St. Clair were at the time housed in segregation alongside their rapists, without

any sight and sound separation, where they were subject to retaliation. Neither Defendant intervened to protect these Plaintiffs, and when pressed on this matter, Defendant Dunn testified that he delegated the matter to Defendant Culliver. Exh. D, Dunn Transcript, at 109:2-112:11. Dunn further testified at length that he generally delegated oversight of security matters, including sexual assaults, to Defendant Culliver. *See generally* Exh. D. Of course, if Defendant Dunn knew at the time that Defendant Culliver was himself a perpetrator of sexual assault or had been accused of sexual assault, that fact is highly relevant to both Culliver and Dunn's conduct, state of mind, intent, knowledge, and deliberate indifference to Plaintiffs, as well as the appropriateness of punitive damages. *See generally Sepulveda v. Burnside*, 170 F. App'x 119, 123 (11th Cir. 2006); *Bonner v. Chambers Cty.*, No. 3:04CV01229 WKW, 2006 WL 1731135, at *2 (M.D. Ala. June 19, 2006); *Giraldo v. Drummond Co., Inc.*, No. 2:09-CV-1041-RDP, 2012 WL 12892789, at *10 (N.D. Ala. Mar. 8, 2012); *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998).

Second, if Culliver was himself willing to sexually assault and coerce sex from his subordinates, that is probative of whether he was deliberately indifferent to Plaintiffs' sexual assaults. Likewise, if he was willing to promote and demote supervisors based on sexual favors, that is probative of whether he was deliberately indifferent to Defendant warden Carter Davenport's epic mismanagement of St. Clair and the culture of violence and apathy that led to Plaintiffs' assaults at knifepoint.

Third, Plaintiffs have specifically alleged that Defendants have a culture of failing to discipline and punish perpetrators of sexual abuse. *E.g., Miller v. Thomas,* Case No.

4:17-cv-00180-LCB-JEO, Dkt. 11, at ¶¶ 130, 236; *Townsel v. Thomas,* Case No. 4:17-cv-00516-LCB-JEO, Dkt. 1 at ¶¶ 72, 79, 173. Indeed, Defendants failed to discipline Plaintiffs' assailants not only for their rapes, but also for sexual assaults both before and after Plaintiffs' assaults. *Id.* If Defendant Culliver was able to engage in improper, unethical, harmful, and apparently widespread conduct against multiple victims or for a prolonged period, that is probative of the culture of sexual assault, violations of the Prison Rape Elimination Act, and misconduct alleged in Plaintiffs' complaint for which Defendants are responsible. Any efforts by Defendant Dunn to ignore or bury the allegations are further probative of such a culture and Defendant Dunn's attitudes towards punishing sexual abuse; his knowledge, statement of mind, intent, and deliberate indifference to Plaintiffs; and the appropriateness of punitive damages.

Fourth, Defendant Culliver's misconduct—and any cover-up by other Defendants—directly counters Defendants' asserted defenses in this action. Defendant Culliver, for example, has sworn under oath that he personally worked to keep prisoners safe by: "us[ing] my best efforts to fulfill my duties and responsibilities consistent with my training and DOC policies and procedures" and "tr[ying] to assist in the allocation of staff and funds in the most appropriate manner among the various institutions." Exh. G, Def. Culliver Resp. to Interrogatory No. 7.  Culliver's misconduct directly disproves these defenses.

Fifth, Plaintiffs are entitled to discovery to determine whether Culliver's interrogatory responses and Dunn's previous sworn testimony are false or misleading. For example, Defendant Dunn testified that he did not discuss Culliver with

Commissioner Sharp at the time he took over, directly contrary to reporting by employees with knowledge. Exh. D, Dunn Transcript, at 106:12-24.

Moreover, given the serious, pervasive, prolonged, and widespread misconduct identified in the Alabama Political Reporter as well the long list of offenses at Exhibit B, November 9, 2018 Letter. Plaintiffs have reason to believe that Culliver may have engaged in other misconduct, related and unrelated to the sexual assaults he committed, dating up to and through 2015. There are likely myriad other potential bases for discovery into these matters that Plaintiffs cannot yet identify given the limited information available to them.

## II.   Defendants Lack Any Proper Basis for Withholding the Information

Defendants now claim that documents and information about Culliver's misconduct cannot be produced pursuant to Ala. Code 36-25-4 and 12-16-216 based on Defendant Dunn's personal November 2018 referral of the Alabama Attorney General's completed investigation into Culliver to the Alabama Ethics Commission. Defendants are incorrect.

First, Defendants have waived any assertion of privilege by delaying production and declining to provide a privilege log. *Eslava v. Gulf Tel. Co.*, No. CV 04-00297-KD-B, 2007 WL 9717308, at *5 (S.D. Ala. July 12, 2007) (when party fails to provide privilege log after intentionally delaying production, privilege is waived). Relatedly, Defendants cannot insulate discoverable information by delaying production and then themselves commencing an Ethics Commission investigation pursuant to which they claim a right to withhold the information. Plaintiffs' discovery requests were served back

in January 2018, and Defendants' responses were provided in March 2018, long before any complaint before the Ethics Commission, first lodged in November 2018. Defendants should have disclosed any complaints against Culliver and responsive employment and personnel records in March 2018 or on an ongoing basis thereafter, as they were obligated to do pursuant to court order (*E.g.*, *Miller v. Thomas*, Case No. 4:17-cv-00180-LCB-JEO, Dkt. 58-1 at 6; Dkt. 60 at 3), or identified any withheld materials pursuant to Federal Rule of Civil Procedure 34(b)(2)(C) or on a privilege log. Even after November 2018, if Defendants intended to withhold information on the basis of Ala. Code 36-25-4, they should have provided Plaintiffs with notice and a privilege log. There is no reason that Defendants could not have done so, since the Department of Corrections, under the leadership of Defendant Commissioner Dunn, apparently itself informed the media of the Ethics Commission review in mid-December 2018.

Second, neither Alabama Code 36-25-4 nor 12-16-216 provide any barrier to production of the withheld materials and information on Culliver's misconduct or any documentary evidence of the same that precedes the 2018 referral of the investigation to the inspector general. Nor does either statute prevent Culliver or Dunn from testifying about the investigation. Section 36-25-4 refers to statute 12-16-216 which discusses secrecy of grand jury proceedings. But neither statute prohibits a *witness* before the Ethics Commission or grand jury from testifying in civil discovery about a matter that is also currently before the Ethics Commission or grand jury. To the contrary, witnesses are permitted to answer questions about grand jury proceedings. *See e.g.*, *William Iselin &*

*Co. v. Ideal Carpets, Inc.*, 510 F. Supp. 343, 347 (N.D. Ga. 1980) (witness could testify in civil proceedings about his testimony before the grand jury).

Section 36-25-4 prohibits the disclosure of investigatory activities taken by the Ethics Commission—not other investigations, such as those in the ADOC Inspector General's Office, any other internal ADOC investigations, or any investigations by the Alabama Attorney General. The Alabama Supreme Court has indicated that the state's Open Records Act reflects a state law policy that "document[s] reflecting the work of government belongs to the public" and thus any statutory exceptions "should be narrowly construed." *Allen v. Barksdale*, 32 So. 3d 1264, 1271 (Ala. 2009) (requiring disclosure of ADOC incident reports). This statute, too, does not prohibit witnesses from disclosing information about underlying misconduct separate from an investigation by the Ethics Committee.

To be sure, section 36-25-4 imposes certain restrictions which "apply to all investigatory activities taken by the director, the commission, or a member thereof, staff, employees, or any person engaged by the commission in response to a complaint filed with the commission and to all proceedings relating thereto before the commission. Such restrictions shall also apply to all information and evidence supplied to the Attorney General or district attorney." Ala. Code § 36-25-4. The prohibition on disclosure of "all information and evidence supplied to the Attorney General" appears to simply name another category of information that the Ethics Commission and its directors, members, staff, or employees cannot disclose: information the Commission supplied to the Attorney

17

General. It cannot be fairly read as a restriction on the subject of an ethics investigation to prevent him from discussing the underlying misconduct or discussing any information he may have provided to the Attorney General. Any other outcome would be perverse: it would allow a state actor to escape scrutiny in a civil rights lawsuit because the underlying misconduct was serious enough to warrant the interest of the state Ethics Commission.

Fourth, even if Ala. Code 36-25-4 were to prohibit disclosure under state law, it would not permit Defendants to shield highly relevant information from discovery in a federal civil rights case and thereby evade liability for federal constitutional violations. Federal discovery is governed by federal common law and federal privileges. *See, e.g.*, *Miller v. MP Glob. Prod.*, LLC, No. CIV.A. 12-00747-KD-N, 2014 WL 1017887, at *1-2 (S.D. Ala. Mar. 17, 2014) (state statute will not trump Federal Rule of Civil Procedure 26 which permits liberal discovery and sets a "low threshold" for relevancy based on the complaint). This is particularly true because it was Defendant Dunn who himself made the decision to refer the matter to the Ethics Commission, thereby insulating it from disclosure under state law, according to his argument. It would be highly perverse to permit Dunn to delay production of documents relevant to a federal civil rights matter, and then to subsequently shield them from discovery based on his own referral of those documents to the Ethics Commission.

## III.    Plaintiffs Are Not at Fault

This Court should reject any attempt by Defendants to lay blame for their discovery violations at Plaintiffs' counsel's feet. Defendants had a duty to disclose the complaints against Culliver, provide the documents in their possession, custody, and control related to those complaints in the first instance, and supplement thereafter under the Court's order and Rule 26(e). Plaintiffs followed up diligently and reasonably relied on defense counsel's representation that responsive documents had and would be produced. Discovery is not a guessing game, and Plaintiffs are not required to anticipate that Defendants are withholding documents or making misleading representations about their discovery responses. *Wallace v. Fontaine Trailer Co.*, No. 7:06-CV-01776-LSC, 2007 WL 9711389, at *6 (N.D. Ala. Dec. 14, 2007) ("Discovery in federal court is not a game of hide the ball."); *Hosea v. Langley*, No. CIV.A. 04-0605-WS-C, 2006 WL 314454, at *5 (S.D. Ala. Feb. 8, 2006), aff'd, 226 F. App'x 863 (11th Cir. 2007) (same); *Agilysys, Inc. v. Hall*, No. 1:16-CV-03557-ELR, 2018 WL 1229990, at *7 (N.D. Ga. Jan. 11, 2018) (litigation is not a game of "gotcha" or "hide the ball"). Plaintiffs are not to blame for failing to discover Defendants' discovery violations more promptly.

More specifically, Defendants are incorrect that Plaintiffs were required to have "made a request related to Mr. Culliver's administrative leave" or questioned Defendant Dunn about Culliver's misconduct at his November 11, 2018 deposition. Exh. P, Letters from Defs. to Pls. of January 11, 2019, at 3. It was Defendants Culliver and Dunn—not Plaintiffs—who knew that Defendant Culliver had engaged in sexual assaults and other prolonged, serious misconduct, and who withheld this information in interrogatory responses and document production until Plaintiffs learned about it in the news. Plaintiffs

were not required to make a separate request for documents related to Culliver's "administrative leave" when they had already requested all of his employment records, including but not limited to personnel files, complaint histories, and disciplinary records, and Defendants had agreed to produce them. Nor were Plaintiffs required to question Dunn at his November 11 deposition about Culliver's misconduct before Defendants had disclosed the matter. This is particularly true because Defendants had created the misleading impression that any misconduct by Culliver was isolated and recent, postdating their discovery responses in this case (*supra* at 8-9), and therefore had no connection to Culliver's brief job assignment change in 2015, the year in which Plaintiffs were assaulted.  Plaintiffs now understand that the contrary may be true.

To the extent that Defendants claim that the improperly withheld documents were stored in some location not labeled a "personnel file," that is also of no import. Defendants Dunn, Culliver, Mercado, and/or Thomas had knowledge of existing records; the legal right to access them; and the obligation to disclose them in response to Plaintiffs' initial and many follow-up requests. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *see also Anz Advanced Technologies v. Bush Hog*, LLC, 2011 WL 814663, *9 (S.D. Ala. Jan. 26, 2011) ("'[C]ontrol' has been 'construed broadly by the courts' to include not just a legal right, but also a 'practical ability to obtain the materials' on demand."), report and recommendation adopted by 2011 WL 814612 (S.D. Ala. Mar. 3, 2011); *Costa v. Kerzner Int'l Resorts*, 277 F.R.D. 468, 471 (S.D. Fla. 2011).

**RELIEF SOUGHT**

20

**I.      This Court Should Compel Defendants to Produce all Responsive Documents and Information Within Seven Days.**

This Court should require that Defendants produce all missing documents and communications related to misconduct by Culliver during his tenure with ADOC in response to Plaintiffs' Master Set of Requests for Production No. 3. This includes any complaints, allegations, or actual or alleged misconduct by Culliver, including underlying records such as incident reports; communications regarding these matters; documents related to internal and external investigation(s) into the misconduct; and personnel actions regarding any misconduct by Defendant Culliver. The materials should be produced within seven days because Defendants' improper withholding of information about Culliver, without any privilege log or other disclosure, in contravention of Rules 26(e) and court order, has already prejudiced Plaintiffs' ability to obtain these documents, conduct follow-up discovery, and use them in most of the depositions in this matter.

This Court should further require Defendant Culliver to supplement his interrogatory responses to provide fulsome information about any and all complaints against him and investigations into his conduct, as well as any civil and legal proceedings against him, as defined and requested in Plaintiff's Individualized Interrogatories Nos. 5 and 6. Exh. G, Individualized Interrogatories.

Finally, this Court should compel Defendants to supplement their responses to Plaintiffs' Individualized Interrogatories No. 1, which seeks information about persons with knowledge, to identify all persons with knowledge of the complaints against Culliver, underlying misconduct, investigations, personnel actions, and communications

about the same, as well as the categories of information known by those witnesses, so that Plaintiffs can conduct efficient follow-up discovery.

## II.   This Court Should Order Culliver to Respond to Questions about Misconduct and Investigation.

Plaintiffs must be afforded an opportunity to question Culliver at his deposition on the extent of his actual or potential sexual assaults and other misconduct as associate commissioner of operations overseeing the security of inmates at ADOC facilities, as well as all related topics. As set forth above in more detail, Defendant Dunn's self-serving referral to the Ethics Commission provides no basis for withholding information highly relevant to federal civil rights violations and Defendants have waived any objections to production. *See supra* at Discussion, II.

## III.  This Court Should Permit a Limited 90-Minute Re-Deposition of Defendant Dunn

This Court should order Defendant Dunn's to reappear for a brief deposition of ninety minutes for questioning limited to the late-disclosed documents and information regarding Defendant Culliver, on a date of his choosing following production of all relevant documents. Plaintiffs should be afforded to question Defendant Dunn about Defendant Culliver's misconduct, Dunn's knowledge of that misconduct, Dunn's personnel actions with respect to Culliver, and any potential cover-up by Defendant Dunn. Plaintiffs must also be permitted to inquire about the timing of when Defendant Dunn learned about the complaints against Culliver; Dunn's role in initiating any investigations of Culliver; Defendant Dunn's failure to disclose Culliver's misconduct in discovery in this case before referring a complaint about Culliver to the Ethics

Commission; and Dunn's decision to refer Culliver's investigation to the Ethics Commission.

The need for a re-deposition is a bed of Defendant Dunn's own making. By its terms, Federal Rule of Civil Procedure 30(a)(2) provides for re-depositions, and this Court must grant leave to re-depose witnesses where the information sought is relevant and not cumulative, so long as the benefit does not outweigh the cost, considering the factors listed in Federal Rule of Civil Procedure (b)(1) and (2). *See Peacock v. Merrill*, No. CA 05-0377-BH-C, 2008 WL 509636, at *4 (S.D. Ala. Feb. 22, 2008) (citation omitted) (granting motion to re-depose party, and stating that trial courts have broad discretion to grand re-depositions, absent a strong showing by party opposing re-deposition); *Collins v. Int'l Dairy Queen*, 189 F.R.D. 496, 498 (M.D. Ga. 1999) (leave "shall be granted to the extent it can be done consistent with Rule 26(b)(2)") (internal citation and quotation marks omitted). When a party fails in his obligations to disclose material facts, courts will permit re-depositions to ensure that claims are heard on their merits. *See*, *e.g.*, *Hill v. Tran*, No. CV 16-00102-WS-N, 2016 WL 10043467, at *2 (S.D. Ala. Sept. 19, 2016) (courts allow second depositions when new information comes to light); *Heller Healthcare Finance, Inc. v. Boyes*, 2002 WL 1558337 (N.D. Tex. 2002) (granting motion to redepose deponent because discovery of documents deponent had concealed at the time of the first deposition); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 389 (W. D. Tenn. 1999) (the general rule, case law, and common sense all support "redeposal where a party fails to disclose relevant information in its possession"). Had Defendants produced documents, disclosed the information they had withheld in

interrogatories, or provided a privilege log for withheld materials, Plaintiffs would have had the opportunity to question Defendant Dunn about these matters. This Court should not reward Defendants' gamesmanship by denying Plaintiffs the ability to question Defendant Dunn on highly relevant matters. Moreover, the proposed discovery could not be more relevant and could not have been performed previously, given that Plaintiffs did not have access to any information about sexual assault allegations against Defendant Culliver.

In addition, the burden on Defendant Dunn will be limited. Plaintiffs are willing to limit the questioning to ninety minutes at a location of Defendant Dunn's choosing on a date of his choosing after the production of relevant documents. Plaintiffs, five men who were violently assaulted and/or raped at St. Clair deserve the right to have their claims decided on the merits. Given the importance of Culliver's misconduct, Plaintiffs should be allowed the opportunity to re-depose Defendant Dunn briefly.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court order that:

(1) Defendants must provide, within seven days, all improperly withheld documents, communications, and information related to Culliver's misconduct and related matters, in response to Plaintiffs' Master Set of Requests for Production No. 3; Plaintiffs' Individualized Interrogatories to Defendant Culliver Nos. 5 and 6; and Plaintiffs' Individualized Interrogatories No. 1 to all Defendants, as described in more detail above;

(2) Defendant Culliver must answer questions at a deposition about his misconduct and all related matters; and,

(3) Defendant Dunn must appear for a brief ninety-minute re-deposition at a location and date of his choosing to respond to questions about the improperly withheld documents and information.

24

RESPECTFULLY SUBMITTED,

**JOHN MILLER**
**MICHAEL MCGREGOR**
**MICHAEL TOWNSEL**


BY:  /s/ Ruth Brown
     One of Plaintiffs' Attorneys

Russell Rourke Ainsworth
Roshna Bala Keen
Ruth Zemel Brown
Theresa Kleinhaus
Rachel Brady
Megan Pierce
**LOEVY & LOEVY**
311 N. Aberdeen Third Floor
Chicago, IL 60607
ruth@loevy.com

## <u>CERTIFICATE OF SERVICE</u>

I, Ruth Brown, an attorney, certify that on January 18, 2019, I served the foregoing Memorandum in Support of Plaintiffs' Joint Motion to Compel Documents and for Leave to Reopen Deposition of Defendant Jefferson Dunn upon on all counsel of record via electronic mail.

/s/ Theresa Kleinhaus_____